UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENNIS L. HAMILTON, | ) | 1:10-cv-00272-GSA-PC |
| | ) | |
| Plaintiff, | ) | <u>SCREENING ORDER</u> |
| | ) | |
| vs. | ) | ORDER FOR PLAINTIFF TO EITHER: |
| | ) | (1)   FILE A FIRST AMENDED |
| JOHN HART, et al., | ) |          COMPLAINT, OR |
| | ) | (2)   NOTIFY THE COURT OF HIS |
| Defendants. | ) |          WILLINGNESS TO PROCEED |
| | ) |          ONLY ON THE CLAIMS |
| | ) |          FOUND COGNIZABLE BY |
| | ) |          THE COURT |
| | ) | |
| | ) | THIRTY DAY DEADLINE TO FILE |
| | ) | FIRST AMENDED COMPLAINT OR |
| | ) | NOTIFY COURT |
| _____ | ) | |

## I.     BACKGROUND

Dennis L. Hamilton ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on February 18, 2010. (Doc. 1.)

On April 13, 2010, Plaintiff consented to Magistrate Judge jurisdiction in this action, and no other parties have made an appearance. (Doc. 8.) Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required. Local Rule Appendix A(k)(3).

Plaintiff's Complaint is now before the Court for screening.

1

## II.     SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id.

To state a viable claim for relief, Plaintiff must set forth sufficient factual allegations to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III.     SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at the California State Prison, Los Angeles County, in Lancaster, California. The events at issue in the Complaint occurred at Kern Valley State Prison ("KVSP") in Delano, California, when Plaintiff was incarcerated there. Plaintiff names

2

as defendants John Hart, C. Prouty, R. Phillips, J. Ronquillo, D. Castro, Llamas, Scott, Durden, Perez, Gonzalez, Massey, Bogle, Trupe, Ocampo, and an unnamed Lieutenant. Plaintiff's factual allegations follow.

Plaintiff was housed in administrative segregation ("Ad-Seg") for refusing to be housed with a cell mate on three occasions. On February 16, 2006, Plaintiff was videotaped by television reporters from MSNBC Lock Up refusing to accept a cell mate.

On February 21, 2006, Sergeant Harden (not a defendant) approached Plaintiff in Ad-Seg and told him he would be moving. Plaintiff told him "so long as I don't have a cell mate." A short time later, five officers came to Plaintiff's cell door and told him to pack up his things. Plaintiff told the Lieutenant that he was going to refuse all cell mates. The Lieutenant told Plaintiff to cuff up. Plaintiff was escorted to a cell which already had an inmate. Plaintiff refused to enter, and he was forced into the cell.

A short while later, Plaintiff told Building Officer Castro he refused to have a cell mate. Castro told Plaintiff to talk to the Lieutenant who had put him there. Shortly afterward Plaintiff also told Building Officer Llamas he was not compatible with his cell mate and needed to move. The cell mate also said that they were incompatible. Llamas said he could not override the decision of the Lieutenant. Plaintiff asked for a mattress, and when Llamas returned with the mattress and told Tower Officer Scott to open the door, Plaintiff stepped out of the door before Llamas could give him the mattress. Llamas told Plaintiff to wait in the shower while he called the Sergeant.

About ten minutes later, Officers Hart, Phillips, Prouty, and Ronquillo approached the shower. Officer Hart told Plaintiff to return to his cell, but Plaintiff refused, stating that he had safety concerns about having a cell mate. Hart told Officer Scott to open the shower door, and Hart pulled out his pepper spray and told Plaintiff he was going back in his cell wet or dry. Plaintiff put his hands up to protect his face, and Hart sprayed him. Plaintiff was afraid he was going to be beaten, so he struggled with the officers. Plaintiff was placed in handcuffs, and one of the officers started to twist his wrist, trying to break it. Plaintiff was taken outside, where his wrist was twisted, kicked, and stomped on.

Approximately twenty minutes later, Nurse Bogle came and asked if Plaintiff had any injuries. Plaintiff said no and was taken back to Ad-Seg without being decontaminated. Plaintiff's entire body, especially his eyes and face, burned. He tried to wash off the spray but only spread it further. Plaintiff began choking and gagging, fearing he would have an asthma attack. For thirty seconds at a time, Plaintiff could not breathe. Two ISU Officers came to take Plaintiff's photograph, and he told them he was having trouble breathing and asked them to call the nurse to decontaminate him. The Officers said he had already been decontaminated and placed him back in the cell.

Plaintiff was left in the contaminated cell for two days without a shower, and he continued to feel extreme burning sensations and experience asthma-like attacks. On the second day, Plaintiff was again interviewed by the reporters, who also coughed and choked because of the contamination.

Plaintiff alleges that Officers Hart, Prouty, Phillips, Ronquillo, and the Doe Lieutenant forced him into the cell because he made a video for reporters and because he continued to refuse a cell mate. Plaintiff alleges that Officers Hart, Prouty, Phillips, Ronquillo, Castro, and Llamas kicked and stomped him while twisting his wrist. Plaintiff also alleges that Officers Hart, Prouty, Phillips, Ronquillo, Castro, Llamas, Scott, Gonzalez, Perez, Durden, Massey, Bogle, Trupe, and Ocampo should have properly decontamined him after he was pepper sprayed, and they knew or should have known that if they did not decontaminate him, they would cause him wanton and unnecessary pain. The officers did not follow the proper procedures pursuant to CDCR Policy to decontaminate him.

Plaintiff requests monetary and declaratory relief.

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. **Excessive Force – Eighth Amendment**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

5

Plaintiff states a cognizable claim for excessive force against defendants Hart, Doe Lieutenant, Castro, Llamas, Prouty, Phillips, and Ronquillo, for their participation in forcing him into a cell, twisting his wrist, and stomping and kicking him.

### B.    Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the

risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation."  Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim."  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

The Court finds that Plaintiff states a medical claim against defendants Hart, Phillips, Prouty, Bogle, Ronquillo, and two unnamed ISU Officers, for failing to properly decontaminate him from pepper spray, causing him to suffer from extreme burning of his skin, eyes, and face, choking and gagging, and experiencing asthma-like attacks.[1]

### C.     **Failure to Protect – Eighth Amendment**

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer, 511 U.S. at 833; Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982).  To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety."  Farmer, at 834.  The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'"  Farmer, 511 U.S. at 843 (*citing* Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of

---

[1] Plaintiff also claims that defendants failed to intercede when they failed to decontaminate him for two days. Plaintiff's claim for failing to decontaminate him is more properly brought as an Eighth Amendment medical claim.

7

causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

The Court finds that Plaintiff states a claim against defendants Phillips and Ronquillo for being present while he was being pepper sprayed and failing to intercede and protect him.

### D.  **Retaliation – First Amendment**

To state a claim for retaliation under the First Amendment, Plaintiff must satisfy five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action . . . ." Brodheim, 584 F.3d at 1270. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.3d 106,

108-09 (7th Cir. 1987). Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." <u>Robinson</u>, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," <u>Brodheim</u>, 584 F.3d at 1269, that is "more than minimal," <u>Robinson</u>, 408 F.3d at 568 n. 11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. <u>Id.</u> at 569. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, <u>id.</u>, or that they were "unnecessary to the maintenance of order in the institution," <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1230 (9th Cir. 1984).

Plaintiff alleges that officers retaliated against him by forcing him into a cell and assaulting him, because he told television reporters he was refusing to have a cell mate, and because he continued to refuse a cell mate. Media interviews by inmates are not protected conduct. <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 86 (1987). Moreover, Plaintiff has not established a causal connection between the officers' actions and Plaintiff's exercise of his First Amendment rights to free speech. At most, Plaintiff has demonstrated that the officers forced him into the cell and assaulted him because he did not follow orders. Therefore, Plaintiff fails to state a claim for retaliation under the First Amendment against any of the defendants.

### E.  Doe Defendants

Plaintiff names an unidentified Lieutenant and two unnamed ISU Officers in the Complaint. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute

names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

### F. Declaratory Relief

Plaintiff requests declaratory relief. With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendant violated Plaintiff's rights is unnecessary.

## V. CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint states cognizable claims against defendants Hart, Doe Lieutenant, Castro, Llamas, Prouty, Phillips, and Ronquillo for use of excessive force; against defendants Hart, Phillips, Prouty, Ronquillo, two ISU Officers, and Bogle for inadequate medical care; and against defendants Phillips and Ronquillo for failure to protect him. However, Plaintiff fails to state any other claims upon which relief can be granted under section 1983 against any of the defendants. Plaintiff shall be required to either file an amended complaint, or notify the Court of his willingness to proceed only on the claims found cognizable by the Court pursuant to this order. Should Plaintiff choose to proceed only on the cognizable excessive force, medical care, and failure to protect claims, the Court will begin the process to initiate service upon defendants Hart, Castro, Llamas, Prouty, Phillips, Ronquillo, and Bogle by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so. Plaintiff

is granted leave to file a First Amended Complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the First Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants for unrelated issues arising after February 18, 2010.  In addition, Plaintiff should take care to include only those claims that were administratively exhausted before February 18, 2010.

With respect to exhibits, Plaintiff is advised that while they are permissible, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  The Court strongly suggests to Plaintiff that they should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence.  If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. Aug., 29, 2012)(en banc), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must

be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (1) File a First Amended Complaint curing the deficiencies identified in this order, or

    (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the claims found cognizable by the Court:  excessive force claims against defendants Hart, Doe Lieutenant, Castro, Llamas, Prouty, Phillips, and Ronquillo; medical claims against defendants Hart, Phillips, Bogle, Prouty, Ronquillo, and two ISU Officers; and failure-to-protect claims against defendants Phillips and Ronquillo;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:10-cv-00272-GSA-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **March 27, 2013**                              **/s/ Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE