UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS L. HAMILTON,<br><br>                Plaintiff,<br><br>        vs.<br><br>JOHN HART, et al.,<br><br>                Defendants. | 1:10-cv-00272-LJO-EPG-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE DENIED AND PLAINTIFF BE FOUND TO HAVE SATISFIED HIS EXHAUSTION REQUIREMENTS<br>(ECF No. 41.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.    BACKGROUND

Dennis Hamilton ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on February 18, 2010.  (ECF No. 1.)  This action now proceeds with the original Complaint, on Plaintiff's Eighth Amendment claims for (1) excessive force, against defendants Correctional Officers ("C/Os") Hart, Doe Lieutenant,[1] Castro, Llamas, Prouty, Phillips, and Ronquillo; (2) inadequate medical care, against defendants C/Os Hart, Phillips, Bogle, Prouty, Ronquillo, Trupe and Ocampo; and (3) failure to protect Plaintiff, against defendants C/Os Phillips and

---

[1] Plaintiff has not sufficiently identified the Doe Lieutenant to initiate service of process.

1

Ronquillo.[2]  (Id.)

On April 29, 2014, defendants C/Os Hart, Castro, Llamas, Prouty, Phillips, Ronquillo, Bogle, Trupe, and Ocampo ("Defendants") filed a Rule 56 motion for summary judgment on the ground that Plaintiff failed to exhaust his available administrative remedies with respect to his § 1983 claims against them in this action.[3]  (ECF No. 41.)  On May 26, 2015, Plaintiff filed an opposition to the motion declaring that he had filed an appeal within the requisite time limit to exhaust his remedies.  (ECF No. 56.)  On June 2, 2015, Defendants filed a reply to the opposition.  (ECF No. 57.)

On December 17, 2015, after reviewing the motion for summary judgment papers, the Court issued an order setting the matter for an evidentiary hearing on the issue of exhaustion of the administrative remedies to determine whether Plaintiff should be allowed to proceed with his case.  (ECF No. 62.)  The Court limited the issues to: (1) whether Plaintiff properly submitted a timely and sufficient prison appeal concerning the events at issue in this case, to which he never received a response; (2) whether Plaintiff's CDC Form 602 ("Form 602") appeal log number KVSP-0-06-03835, which was decided at the final level of review concerned the events at issue and satisfied the exhaustion requirement for the case herein; and (3) whether tolling of the deadline to file an appeal should apply to Plaintiff's Form 602 appeal submitted on April 6, 2006.  (Id.)

On January 26, 2016, an evidentiary hearing was held before Magistrate Judge Grosjean. Defendants called the following witnesses to testify: (1) Plaintiff Dennis Hamilton, (2) C/O Gerardo Gomez, (3) Defendant C/O John Hart, (4) Correctional Counselor Mike Seaman, and (4) Correctional Counselor Belinda Gricewich.  Plaintiff conducted cross-

---

[2] On April 30, 2013, the Court issued an order dismissing Plaintiff's retaliation claim from this action for failure to state a claim, and dismissing defendants Scott, Durden, Perez, Gonzalez, and Massey from this action, for Plaintiff's failure to state any claims against them upon which relief may be granted under 1983.  (ECF No. 19.)

[3] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 41 at 2-3.)

2

examination and called himself as a witness.  The Court admitted the following exhibits into evidence: (1) DX A; (2) DX B; (3) DX E; (4) DX F; (5) DX J; (6) DX M; (7) N; (8) DX R. After closing arguments, the Court took the matter under submission and now makes findings and recommendations.  (ECF No. 70.)

## II.    PLAINTIFF'S ALLEGATIONS

The following are Plaintiff's allegations as presented in his Complaint.  Note that Defendants' motion and the evidentiary hearing did not cover the substance of these allegations; it only concerned the question of whether Plaintiff properly exhausted his administrative remedies before filing this lawsuit.

Plaintiff is presently incarcerated at Ironwood State Prison, in Blythe, California.  The events at issue in the Complaint allegedly occurred at Kern Valley State Prison ("KVSP") in Delano, California, when Plaintiff was incarcerated there.  Plaintiff's factual allegations follow.

Plaintiff was housed in administrative segregation ("Ad-Seg") for refusing to be housed with a cell mate on three occasions.  On February 16, 2006, Plaintiff was videotaped by television reporters from MSNBC Lock Up refusing to accept a cell mate.

On February 21, 2006, Sergeant Harden (not a defendant) approached Plaintiff in Ad-Seg and told him he would be moving.  Plaintiff told him "so long as I don't have a cell mate." A short time later, five officers came to Plaintiff's cell door and told him to pack up his things. Plaintiff told the Lieutenant that he was going to refuse all cell mates.  The Lieutenant told Plaintiff to cuff up.  Plaintiff was escorted to a cell that already had an inmate.  Plaintiff refused to enter, and he was forced into the cell.

A short while later, Plaintiff told Building C/O Castro he refused to have a cell mate. Defendant Castro told Plaintiff to talk to the Lieutenant who had put him there.  Shortly afterward, Plaintiff also told Building C/O Llamas he was not compatible with his cell mate and needed to move.  The cell mate also said they were incompatible.  Defendant Llamas said he could not override the decision of the Lieutenant.  Plaintiff asked for a mattress, and when Llamas returned with the mattress and told Tower Officer Scott to open the door, Plaintiff

3

stepped out of the door before Llamas could give him the mattress.  Llamas told Plaintiff to wait in the shower while he called the Sergeant.

About ten minutes later, C/Os Hart, Phillips, Prouty, and Ronquillo approached the shower.  Defendant Hart told Plaintiff to return to his cell, but Plaintiff refused, stating that he had safety concerns about having a cell mate.  Hart told C/O Scott to open the shower door, and Hart pulled out his pepper spray and told Plaintiff he was going back in his cell wet or dry.  Plaintiff put his hands up to protect his face, and Hart sprayed him.  Plaintiff was afraid he was going to be beaten, so he struggled with the officers.  Plaintiff was placed in handcuffs, and one of the officers started to twist his wrist, trying to break it.  Plaintiff was taken outside, where his wrist was twisted, and he was kicked and stomped on.

Approximately twenty minutes later, Nurse Bogle came and asked if Plaintiff had any injuries.  Plaintiff said no and was taken back to Ad-Seg without being decontaminated.  Plaintiff's entire body, especially his eyes and face, burned.  He tried to wash off the spray but only spread it further.  Plaintiff began choking and gagging, and feared he would have an asthma attack.  For thirty seconds at a time, Plaintiff could not breathe.  Two ISU Officers came to take Plaintiff's photograph, and he told them he was having trouble breathing and asked them to call the nurse to decontaminate him.  The Officers said he had already been decontaminated and placed him back in the cell.

Plaintiff was left in the contaminated cell for two days without a shower, and he continued to feel extreme burning sensations and experience asthma-like attacks.  On the second day, Plaintiff was again interviewed by the reporters, who also coughed and choked due to the contamination.

Plaintiff alleges that defendants C/Os Hart, Prouty, Phillips, Ronquillo, and the Doe Lieutenant forced him into the cell because he made a video for reporters and because he continued to refuse a cell mate.  Plaintiff alleges that defendants C/Os Hart, Prouty, Phillips, Ronquillo, Castro, and Llamas kicked and stomped on him while twisting his wrist.  Plaintiff also alleges that C/Os Hart, Prouty, Phillips, Ronquillo, Castro, Llamas, Scott, Gonzalez, Perez, Durden, Massey, Bogle, Trupe, and Ocampo should have properly decontaminated him after he

4

was pepper sprayed, and that they knew or should have known that if they did not decontaminate him, they would cause him wanton and unnecessary pain.  Plaintiff claims that the officers did not follow the proper procedures pursuant to California Department of Corrections and Rehabilitation ("CDCR") Policy to decontaminate him.

## III.   LEGAL STANDARDS

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  The exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 534 U.S. 516, 532 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 90 (2006).  When an inmate's administrative appeal is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable."  Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also, Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available.)

In deciding a motion for summary judgment "for failure to exhaust nonjudicial remedies under the PLRA, a district court may look beyond the pleading and decide disputed issues of

fact." Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).  Morton v. Hall, 599 F. 3d  942 (9th Cir. 2010).

### B.    **Motion for Summary Judgment for Failure to Exhaust**

The failure to exhaust in compliance with section 1997e(a) of the PLRA is an affirmative defense under which Defendants have the burden of raising and proving.  Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under section 1997e(a).  Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (*en banc*).  Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under section 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56.  Id.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(e).  Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted").  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The Court may consider other materials in the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen

---

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint."  Albino II, 747 F.3d at 1162.

v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).   In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party."   Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).   The Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner.   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."   Albino II, 747 F.3d at 1172.   If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."   Id.   The ultimate burden of proof remains with defendants, however.   Id.   "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."   Id. at 1166.

## C.   Evidentiary Hearing

If "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding."   Albino II, at 1168. When feasible, such questions of fact should be decided before addressing the merits of the claim.   Id. at 1170.   "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171.

Furthermore, while parties may be expected to simply reiterate their positions as stated in their briefs, "one of the purposes of an evidentiary hearing is to 'enable [ ] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice.' " United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). All of this assists the finder of fact in evaluating the witness' credibility.   Id.   It is only in "rare

instances . . . that credibility may be determined without an evidentiary hearing."   Earp v. Ornoski, 431 F.3d 1158, 1169–70 (9th Cir. 2005).

## IV.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Parties' Positions as Presented in Motion for Summary Judgment Papers

In their motion for summary judgment, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his allegations that the named Defendants used excessive force against him, failed to protect him from excessive force, or were deliberately indifferent to his serious medical need.   Plaintiff's complaint stems from an incident which occurred at KVSP on February 21, 2006.   (ECF No. 41-1, Defendants Statement of Undisputed Facts ("DUF") 1.)   As a result of the incident, Plaintiff received a Rules Violation for Battery on a Peace Officer.   (DUF 2.)   After the hearing on the Rules Violation, Plaintiff submitted Form 602 appeal log number KVSP-0-06-03835, of which Plaintiff submitted a copy with the Complaint.   (DUF 3.)   That appeal was reviewed at the First Second, and Third Levels, and was denied at the Third Level.   (DUF 4.)   Defendants however, assert that the appeal concerned a due process claim, and did not concern claims that Plaintiff was subjected to excessive force, was not adequately protected from excessive force, or that his medical needs were ignored. (DUF 3 and 5.)   Defendants, furthermore, claim that the appeal did not give CDCR any opportunity to resolve such a claim before the filing of suit.   (ECF No. 41-2, Defendants Points and Authorities ("Def. P&As") at 5:13-16.)

Defendants also assert that Plaintiff did submit a separate CDC Form 602 appeal which referred to an incident which occurred on February 21, 2006.   (DUF 6.)   Defendants however claim that the appeal was received on April 6, 2006[5], and was therefore untimely. (DUF 7.) Defendants assert that there is no record at KVSP of Plaintiff submitting a timely Form 602

---

[5]   The date of this submission is in dispute.  Defendants' briefs state that this appeal was received April 6, 2006.  (DUF 7; Def. P&As at 2:25-27.)  However, at the evidentiary hearing, testimony and evidence presented by Defendants asserted that this Form 602 appeal was actually submitted on April 16, 2006 and received April 27, 2006, not April 6, 2006.  (Defendants' Evidentiary Hearing Exhibit DX R ("DX R") at 1; Evidentiary Hearing Transcript ("Transcript") at 71:5-9.)  Plaintiff, on the other hand, contends he submitted his first duplicate Form 602 appeal to the Appeals Office on April 1, 2006.  (ECF No. 56 at 3¶5; Transcript at 29:7-13, 115:1-6, 118:20-119:1; ECF No. 56 at 3.)  However, as will be discussed, the Court need not resolve this dispute.

appeal, which was accepted, referring to an incident at KVSP on February 21, 2006, involving any of the defendants in this action.  (DUF 8.)

Plaintiff argues that he has exhausted his administrative remedies, or in the alternative, that he was precluded from doing so.  He contends that he timely submitted a Form 602 appeal addressed to defendant C/O Hart on February 26, 2006, as part of the prison's informal level appeal process, by placing the form inside an envelope addressed to defendant Hart, and placing that envelope in his cell door at mail call for staff pick-up.  (ECF No. 56 at 3¶4.)  In support of his opposition to Defendants' motion, Plaintiff submitted a Declaration on his own behalf, stating that he submitted a timely Form 602 appeal on February 26, 2006  and attaching an authenticated documented purporting to be a copy of the timely submitted form 602 appeal covering this incident.

**B. Analysis of Summary Judgment Motion**

The Court finds that Defendants are not entitled to summary judgment as a matter of law based on the submissions in the motion for summary judgment briefs.  Drawing all inferences in favor of Plaintiff, the non-moving party, the Court determined it could not grant Defendants' summary judgment motion based on the undisputed facts and that resolution required an evidentiary hearing to assess the credibility of the parties.  In particular, if Plaintiff's version of events were true, then Plaintiff timely submitted a 602 grievance. Plaintiff submitted his own declaration and a copy of what Plaintiff claimed was the timely grievance in support of his opposition to Defendants' motion for summary judgment. Summary judgment on the papers is thus inappropriate.

Taking direction from the Ninth Circuit in Albino II, the Court went on to hold an evidentiary hearing to make findings of fact in order to fully resolve the question of exhaustion and decide the disputed facts. Albino II, 747 F.3d at 1166, 1168 ("If material facts are disputed . . . the district judge rather than a jury should determine the facts," and may do so through "a preliminary proceeding").

//

//

9

V.   **FINDINGS OF FACTS AND CONCLUSIONS OF LAW BASED ON EVIDENTIARY HEARING ON EXHAUSTION**

On January 26, 2016, the Court held an evidentiary hearing on the question of exhaustion.  It thus provides the following recommended findings of fact and conclusions of law.

A.   **Findings Regarding California Department of Corrections and Rehabilitation (CDCR) Administrative Appeal System**

The Court heard testimony and evidence regarding the applicable grievance process and makes the following factual findings.  The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15 § 3084.1(a)(2006).  The process is initiated by submitting a CDC Form 602 (rev. 12-87).  Id. at § 3084.2(a).

At the time of the events giving rise to the present action, California prisoners were required to submit appeals within fifteen working days of the event being appealed.[6]  Id. at §§ 3084.2(b), 3084.5(a), 3084.6(c) (2006).  Four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level.  Id. at § 3084.5 (2006).  A final decision at the third level[7] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.5(d); see, Lira, 427 F.3d at 1166.  In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

In the instant matter, there was some dispute as to whether mailing a Form 602 appeal to a correctional officer, as part of the informal level of the appeals process, would commence

---

[6] There was some dispute as to when Plaintiff was required to submit the CDC Form 602.  Both parties' briefs stated that the form was to be submitted within 30 days of the incident.  (DUF 7; Def. P&As at 2:25-27, 5:19-21; ECF No. 56 at 5¶2.)  However, 15 CCR § 3084.6(c), as current through December 29, 2006, provides that "appellants must submit within 15 workings days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision."  At the evidentiary hearing, testimony of the parties and witnesses established the 15 day deadline. (Transcript at 4:19-5:15, 85:22-25, 93:9-10.)

[7] The third level is sometimes known as the Director's level.

10

the appeal process. Witnesses at the evidentiary hearing testified that a prisoner may start the informal process by mailing or handing the Form 602 appeal to the guard the appeal relates to. (Transcript at 14:7-12, 15:4-11, 73:22-25, 85:22, 102:24-103:1, 110:11-111:3.)  However, there was also testimony that where an appeal relates to officer misconduct, the informal process may be bypassed or waived.  (Transcript at 14:13-15:3, 17:2-5, 83:3-6, 85:11-14.)  Indeed, title 15, section 3084.5 of the California Code of Regulations effective in 2006, provided that the informal process may be waived. §3084.5(a)(3).  Those regulations provide that "[t]he informal level shall be waived for appeal of . . . [a]ny action, which the appeals coordinator determines, cannot be resolved informally." §3084.5(a)(3)(F).  Such wording suggests that the appeals coordinator is the one who waives the informal process, and thus that a prisoner can begin a grievance through the informal process even if it is the sort of grievance where the informal process may be waived.

Although Defendants refer to section 3084.5(a)(3)(G), to show that Plaintiff should have known that the informal level was waived for appeals alleging correctional officer misconduct (Transcript at 105:21-106:7), there is no evidence that a prisoner could unilaterally bypass the informal level.  At the evidentiary hearing, both Plaintiff and Ms. Gricewich testified that the waiver would have to come from the Appeals Office.  (Transcript at 15:24-16:2, 111:17-20.)  Ms. Gricewich also testified that if a prisoner mails a Form 602 appeal to an officer, and that appeal relates to a situation that would properly bypass the informal level under the Regulations, the officer should send the appeal to the Appeals Office. (Transcript at 103:17-24.)  Furthermore, copies of Plaintiff's other Form 602 appeals submitted in 2006 which were admitted into evidence, as well as Plaintiff's testimony, show that the appeal form available to Plaintiff in 2006 (CDC 602(12/87)) specifically required that:

> "[w]ith the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decision, [prisoners] must first informally seek relief through discussion with the appropriate staff member, who will sign [the] form and state what action was taken."

(Transcript at 105:10-106:6, DX E-H.)  Thus, it appears that whether or not the Appeals Office

could be expected to waive the informal process, the inmate could not unilaterally do so and could begin the Form 602 appeal process by informally presenting the grievance to the relevant officer.  Thus, starting the informal process by mailing or handing a Form 602 appeal to an officer would commence the appeal process.

**B.** **Findings on Exhaustion of Administrative Remedies**

At the hearing, Plaintiff testified that he mailed a Form 602 appeal to officer Hart on February 26, 2006, within 15 days of the incident.

> "MR. HAMILTON: Well that's what the declaration was, but I informally sent a 602 to J. Hart on February 26th, 2006. He never responded. Being that he didn't respond, I sent him two requests for interviews. He didn't respond to those.
>
> So on April 1st I sent the 602 to the appeals coordinator. They responded with you can't bypass the first -- the informal level. I then -- we went back and forth two or three times stating I've already told you that this person won't respond. And that's the end of this 602 process that I understand."

(Transcript at 114:22-115:6.)  Plaintiff explained that he was unable to make a copy of his initial Form 602 appeal addressed to defendant Hart because he was being housed in Administrative Segregation after the February 21, 2006, incident, so he instead made a hand written copy for his records.  (ECF No. 56 at 3¶4-5; DX B) at 24; Transcript at 24:14-23, 28:5-29:5, 118:23-119:1.)  Plaintiff also explained that he did not submit the form on February 26, 2006 to the Appeals Office directly because he was required as part of the appeal process to engage the correctional officer that was involved in the incident at the informal level first. (ECF No. 56 at 3¶5; Transcript at 26:22-28:7, 29:21-30:4, 39:2-10, 114:23-115:6, 118:2-19.) Defendant Hart however failed to respond within the allotted time period.  (ECF No. 56 at 3; Transcript at 28:22-24, 29:16-20, 39:2-10, 114:22-25.)   Plaintiff thereafter submitted two requests for interview to defendant Hart, requesting a response to the previously submitted appeal, to no avail.  (ECF No. 56 at 3¶4; Transcript at 114:4-13, 114:22-25, 117:7-118:1.)

Plaintiff testified that he filed a duplicate appeal directly with the Appeals Office on April 1, 2006, adding to this appeal the facts of defendant Hart's failure to respond to his

12

February 26, 2006, Form 602 appeal.  (ECF No. 56 at 3¶5; Transcript at 29:7-13, 115:1-6, 118:20-119:1.)  Plaintiff explained that he did not file a duplicate appeal earlier because he was waiting for a response on his initial appeal and two subsequent requests for interview, all submitted to defendant Hart.  (Transcript at 114:22-115:3)  Plaintiff also testified that given that he had submitted a timely Form 602 to defendant Hart as part of the informal level, and given that the deadline had already expired when he did not receive an initial response from Hart, the date of his duplicate appeal was irrelevant.  (Transcript at 119:2-11, 126:12-21, 129:15-21.)

According to Plaintiff's testimony, his April 1, 2006, duplicate appeal was "screened out" (rejected) on April 11, 2006, for an improper attempt to bypass the informal level.  (ECF No. 56 at 4¶6; Transcript at 29:21-30:1, 115:2-3.)  He also testified to having submitted various communications to the Appeals Office asserting that he had not improperly bypassed the informal level because it was defendant Hart that had failed to respond to his appeal.  (Transcript at 38:16-22, 97:7-19 115:1-6, 116:2-5, 129:2-14.)  Plaintiff explained that he subsequently submitted Form 602 appeal log number KVSP-0-06-03835 (DX B at 17-20), where he again addressed the February 21, 2006 incident and related claims.  (ECF No. 56 at 4¶7; Transcript at 44:17-45:5, 115:7-13.)  However, according to Plaintiff's testimony, Defendants precluded him from presenting evidence of his Eighth Amendment claims by failing to interview him.  (ECF No. 56 at 4¶7; Transcript at 45:6-9, 50:3-51:19.)

At the evidentiary hearing, Defendants admitted that Plaintiff filed multiple Form 602 appeals related to the February 21, 2006, incident and his claims in this case.  (Transcript at 66:21-25, 97:7-19.)  Indeed, Defendants' own records summarize these appeals as being related to the February 21, 2006 incident.  (DX R.)  However, Defendants claim - - based on these records - - that Plaintiff's first related filing was on April 16, 2006, not February 26, 2006, and that it was therefore untimely.  (Transcript at 92:19-93:23; DX R at 2.)  It is their position that Plaintiff is lying when he claims to have submitted an earlier Form 602 appeal to Defendant Hart as part of the informal process.  (ECF No. 57 at 2.)

After hearing all of the witness testimony and evaluating the evidence, the Court finds that Plaintiff exhausted his remedies by timely filing a Form 602 appeal addressing the claims in his case.   The Court finds Plaintiff's testimony at the evidentiary hearing regarding his submission of the Form 602 appeal on February 26, 2006 was credible, based in part on the Court's evaluation of Plaintiff's demeanor at the hearing. See, Mejia, 69 F.3d at 315.  Plaintiff also submitted into evidence a handwritten duplicate copy of the Form 602 appeal he contends was submitted on February 26, 2006, which corroborates his account.  (DX B at 24.)  While the duplicate copy of the Form 602 appeal is undated, this is not dispositive.  In fact, it is worth noting that Plaintiff did not attempt to date the appeal after the fact to artificially support his case.  Moreover, Defendants' records of Plaintiff's multiple appeals indicate that Plaintiff consistently maintained in April 2006 that he had already submitted a Form 602 appeal regarding the incident to defendant Hart *before* his first related submission to the Appeals Office.  (DX R at 2) ("The Appeals Office did not receive the appeal you claim you filed on an earlier date"). There is also substantial evidence that Plaintiff understood and regularly used this appeal process correctly during that time period.  (Transcript at 8:9-9:15, 27:8-15, 115:24-116:2.)

In contrast, while defendant Hart and Officer Gerardo Gomez were both generally credible[8], neither could specifically remember the events that took place at that time.  (Transcript at 52:20-54:1, 55:1-9, 61:20-21.)  Additionally, defendant Hart seemed unclear as to what he would have done or was supposed to have done had he received Plaintiff's (or any other prisoner's) Form 602 appeal through prison mail.  (Transcript at 60:6-12.)  According to testimony by Ms. Gricewich, a correctional officer who received a Form 602 appeal regarding

---

[8] While testimony offered by Defendants' witnesses was generally credible, Defendants briefs and evidence proved to be somewhat unreliable at various instances. As an example, in their briefs, Defendants assert that Plaintiff first submitted an appeal related to the February 21, 2006 incident on April 6, 2006. (DUF 7, Def. P&As at 2:25-27.)   The Declaration of Mike Seaman attests to the same.  (DX D at 2¶4.)  However Defendants' Appeals Tracking System shows both an April 16, 2006, *and* April 16, 2005 date.  (DX R at 2.)  Furthermore, Defendants' witnesses at the evidentiary hearing - - including Mr. Seaman - - testified to an April 16, 2006 date. (Transcript at 71:5-9, 92:19-24.)  As second example, in their briefs Defendants asserted that the Regulations gave Plaintiff 30 days to submit his appeal.  (DUF 7, Def. P&As at 2:25-27.)  The Declaration of Mike Seaman also supported this contention.  (DX D at 2¶4.)  However, oral testimony at the hearing, and Cal. Code Reg. tit. 15 § 3084.7(c), as updated through July 12, 2006, specified 15 days.  (Transcript at 5:11-14.)

officer misconduct *should have* delivered the form to the Appeal's Office for processing and waiver of the informal level (Transcript at 103:17-20); although she expressed doubt that the Appeals Office would actually receive it.  (Transcript at 103:21-24.)  Defendant Hart seemed unfamiliar with the required process.  (Transcript at 59:24-60:12.)  This evidence indicates that even if Defendants' witnesses testified truthfully, they did not negate Plaintiff's version of events.  The appeal mailed to Officer Hart through prison mail may have been forgotten or misplaced so as not to reach the Appeals Office even if Plaintiff submitted it as he testified.

Indeed, no evidence directly refuted Plaintiff's testimony that he placed a Form 602 appeal addressed to defendant Hart for mail pick-up by staff as part of the informal process on February 26, 2006.  The closest Defendants came to refuting this account was evidence that the February 26, 2006, appeal was not *processed* and/or *accepted* by the Appeal's office.  (DX D; Transcript at 67:5-68:16, 99:12-14; 112:18-113:1).  The Court is not persuaded that Plaintiff failed to submit a timely Form 602 appeal solely because it did not appear in CDCR's records. It is worth noting that CDCR did not keep copies of either the Form 602 appeals that were rejected or their corresponding screening memoranda during this time period.  (Transcript at 105:2-9, 112:18-113:1.)  It also remains unclear whether, and how, CDCR kept notes on or otherwise tracked appeals *not* assigned log numbers in their tracking system. (Transcript at 88:13-90:8.) Testimony, however, did establish that CDCR kept brief summaries - - and nothing more - - of those appeals that were rejected but nonetheless assigned log numbers due to their referral to the KVSP hiring authority.  (Transcript at 91:15-92:3; DX R at 2.)  It seems possible that Plaintiff's February 26, 2006 Form 602 appeal simply did not reach defendant Hart or the Appeals Office, and therefore, was not processed or logged into the system.  Thus, the fact that it does not appear in CDCR's records does not fully refute Plaintiff's testimony.

The Seventh Circuit case of Dole v. Chandler, 438 F.3d 804 (7th Cir. 2006), while not governing, is instructive.   In Dole, the plaintiff, a prisoner, completed a grievance form complaining of excessive force.  Id. at 807.   He wished to retain a copy of his complaint in case it was "lost" by prison authorities, but lacking access to a copy machine, he copied the complaint by hand.  Id.  After being told that the grievance had to be submitted directly to the

"ARB", the plaintiff "placed his complaint in an envelope addressed to the ARB . . . [and] placed the envelope in the 'chuckhole' of his cell for the guard to pick up and mail." Id. Eventually after not receiving a response and inquiring on the status of his grievance, the plaintiff in Dole was informed that the "ARB had no record of the grievance." Id.   He was not given instructions on how to proceed and by the time he learned that the grievance was lost, "the sixty day period for filing a timely grievance had passed."   Id. at 807-808.   In overturning the district court's order granting summary judgment for failure to exhaust, the Seventh Circuit rejected the defendant's argument that the goals of the PLRA would be betrayed by permitting Dole to proceed with his claim, reasoning that those goals would have been achieved had Dole's complaint "not been misplaced by the very system that, under defendants' theory, the PLRA was designed to benefit." Id. at 813.   The court there thus held that because "Dole took all steps necessary to exhaust one line of administrative review, and did not receive instructions on how to proceed once his attempts at review were foiled in the factual context of this case, he ha[d] exhausted his administrative remedies under the PLRA."   Id.

        While not precedential, this Court agrees with the reasoning in Dole, whose facts are substantially on point.   Therefore, given the credible testimony by Plaintiff at the evidentiary hearing, as well as Ms. Gricewich's testimony that a prisoner could commence the informal level appeal process by handing or mailing a Form 602 appeal to an officer, the Court finds that Plaintiff's February 26, 2006 informal level submission, addressed to defendant Hart, was sufficient to commence the appeal process, and was thus timely and sufficient to exhaust his administrative remedies.   Given Defendants' failure to identify a remedy for lost or misplaced appeals, and given that Plaintiff submitted various appeals related to the February 21, 2006, incident, this Court finds that Plaintiff - -like the plaintiff in Dole - - did all he could do to exhaust his remedies, and that if he did not, it was only because CDCR lacked an adequate administrative process that permitted him to do so.   See, Dole, 438 F.3d at 813; see also, Nunez, 591 F.3d at 1224–26.

        It is also worth remembering that the issue of exhaustion is one that can have the effect of preventing a meritorious claim from being heard, which is why it is Defendants' burden to

prove that a prisoner suit should be dismissed for failure to satisfy the exhaustion requirement. Here, given that Defendants have not met their burden of proof, dismissal would be inappropriate and counter to the PLRA's provisions and policy.

The Court does not make findings on the two remaining issues addressed by the evidentiary hearing because they are moot based on the Court's findings on this first issue.

## VII.   CONCLUSION AND RECOMMENDATIONS

The Court finds that given the evidence, starting the informal grievance process by mailing or handing a Form 602 appeal to an officer commences the appeal process.  Thus, the Court also find that based on Plaintiff's credible testimony, his February 26, 2016, informal level submission, addressed to defendant Hart, was sufficient to commence the appeal process, and was thus timely and sufficient to exhaust his administrative remedies.  Based on this finding and the reasons outlined above Defendants have failed to meet their burden of demonstrating that Plaintiff failed to exhaust his remedies prior to filing the instant suit, in compliance with section 1997e(a).

Based upon these Findings of Fact and Conclusions of Law, **IT IS HEREBY RECOMMENDED that:**

1. Defendants' motion for summary judgment on the issue of failure to exhaust, filed on April 29, 2014, be DENIED;

2. Plaintiff be deemed to have satisfied his exhaustion requirement; and

3. Plaintiff's claim be permitted to proceed on the merits.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within thirty (30) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 21, 2016**                   /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE